**IN THE FEDERAL DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

| | |
|---|---|
| **CHARLES D. MARTIN** | Case No. |
| Plaintiff | Judge: |
| -v- | **COMPLAINT W/JURY DEMAND** |
| **MID AMERICA MORTGAGE, INC.** | |
| Defendant. | |

Now comes Plaintiff, CHARLES D. MARTIN, by and through undersigned counsel, and states as follows:

I.      **JURISDICTION & VENUE**

1.      Jurisdiction of this Court arises under 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, *et seq.* (RESPA), and the Truth in Lending Act, 15 U.S.C. §§1601, *et seq.* (TILA).

2.      This action is also filed to enforce relations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014 including 12 C.F.R. §§1026, *et seq.* of Regulation X, as well as the FDCPA.

3.      This Court has supplemental jurisdiction to hear any and all state law claims pursuant to 28 U.S.C. §1367.

4.      Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b) because the Plaintiff resides in this judicial district, the property which is the subject of the mortgage is in this judicial district, and many of the fact relevant to this Complaint occurred in this judicial district.

1

## II.    INTRODUCTION & PARTIES

5.      In January of 2013, the Consumer Finance Protection Bureau ("CFPB") enacted a series of rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law No. 111-203, 124 Stat. 1376 (2010).

6.      On January 17, 2013, the CFBP issued the Real Estate Settlement Procedures Act (Regulation X), and the Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 F.R. 10901 (Feb. 14, 2013), and 78 F.R. 10695 (Feb. 14, 2013), which became effective on January 10, 2014.

7.      The loan at issue in the present case is a "federally related mortgage loan" as that term is defined by 12 C.F.R. § 1024.2(b) and is owned by Mid America Mortgage, Inc.

8.      Mid America Mortgage, Inc. (hereinafter, "Mid America") is an out of state mortgage company that is headquartered at 15301 Spectrum Drive, Suite 405, Addison, TX 75001. Defendant services the Note and Mortgage on Plaintiff's Property.  The Note and Mortgage are hereafter collectively referred to as the "Loan."

9.      Mid America is, and was at all times relevant and material hereto, subject to the aforesaid Regulations, and does not qualify for the "small servicers" exception that is defined in 12 C.F.R. § 1-26.41(e)(4), nor the "qualified lender" exemption that is defined in 12 C.F.R. § 617.700.

10.     Plaintiff, Charles D. Martin, is a natural person who owns the property located at 7093 Winton Rd., Cincinnati, OH, 45224 (hereinafter, "the property").  Plaintiff is a borrower as that term is defined by the Real Estate Settlement Procedures Act ("RESPA").

11.     Plaintiffs have a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f), § 2605(t), 12 C.F.R. §1024.40, and §1024.41 for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

12.     Plaintiffs are asserting a claim for relief against Mid America for breaches of the specific rules under Regulation X as set forth in Plaintiff's Complaint.

13.     The conduct of the Defendant as set forth herein demonstrates a "pattern or practice" of non-compliance with the Real Estate Settlement and Procedures Act (RESPA) Regulation X for which liability may be imposed for actual and statutory damages, including counsel fees and costs, 12 U.S.C. §2605(f), and §2614, and 15 U.S.C §1640(a).

14.     Plaintiff also asserts claims against Mid America based upon state law for fraud, breach of contract, and unjust enrichment.

## III.    FACTUAL ALLEGATIONS

15.     Plaintiff incorporates all the preceding paragraphs of the Complaint as if fully rewritten and restated herein.

16.     On February 7, 2019, Plaintiff retained Cozmyk Law Offices LLC for representation in settling a mortgage dispute.  On April 4, 2019, Defendant filed a foreclosure action in the Court of Common Pleas, Hamilton County, Ohio with case number A 1901703 against Plaintiff, alleging that Defendants were in default on his mortgage payments.  Cozmyk Law Offices LLC also represented Plaintiff in the aforementioned foreclosure action.  That case was ultimately dismissed and refiled as case number A2202309 which is still pending.

17.     On December 11, 2019, Plaintiff submitted a loan modification application to Defendant via email. See Exhibit A.

18.     On February 13, 2020, Plaintiff's counsel spoke with Defendant on the phone regarding the status of the application. Defendant stated that the application was in underwriting.

19.     On March 5, 2020, Defendant emailed Plaintiff's counsel an approval letter (dated February 28, 2020) that approved Plaintiff's loan modification application and offered a trial payment agreement. See Exhibit B. The agreement stated that the first trial payment would be due on April 1, 2020.

20.     On March 26, 2020, Plaintiff accepted the trial modification offer and the signed trial modification documents were sent to Defendant.  See Exhibit B.

21.     Plaintiff successfully completed the trial modification plan by making trial payments for the months of April, May, and June of 2020. See Exhibit C. Although Plaintiff successfully made all the required trial payments, Defendant did not offer a permanent modification agreement in breach of the trial payment agreement.

22.     On August 5, 2020, Plaintiff's counsel called Defendant and requested the status of the permanent modification agreement.  The Defendant's representative stated that the delay was due to Covid and the agreement would be ready in the next 7-10 business days.

23.     On September 1, 2020, Plaintiff's counsel called Defendant and requested the status of the permanent modification agreement again.  The Defendant's representative stated that Plaintiff would need to become current in order to receive the permanent agreement.

24.     On October 8, 2020, Plaintiff mailed a Notice of Error pursuant to 12 C.F.R. Section 1024.35 which requested that Defendant respond to Plaintiff's Notice of Error that Defendant failed to issue the borrower the FHA HAMP permanent modification documents timely and in accordance with the FHA SFH Handbook section III(A)(2)(5)(a).  See Exhibit D.

25.     On October 16, 2020, Defendant had not acknowledged receipt of Plaintiff's October 8, 2020 Notice of Error despite the statutory requirements imposed pursuant to 12 C.F.R. 1024.35(d) that defendant must send a written acknowledgement of receipt of Plaintiff's Notice of Error no later than 5 days after it is received.

26.     On November 9, 2020, Defendant had not responded to Plaintiff's October 8, 2020 Notice of Error, despite the statutory requirements imposed pursuant to 12 C.F.R. 1024.35(e)(3) that Defendant must respond to a Notice of Error no later than 30 days after it is received.

27.     Accordingly, on December 21, 2020, Defendant issued a second Notice of Error for failure to respond to the October 8, 2020 Notice of Error. See Exhibit E.

28.     On December 30, 2020, Defendant had not acknowledged receipt of Plaintiff's December 21, 2020 Notice of Error despite the statutory requirements imposed pursuant to 12 C.F.R. 1024.35(d) that Defendant must send a written acknowledgement of receipt of Plaintiff's Notice of Error no later than 5 days after it is received.

29.     On January 24, 2021, Defendant had not responded to Plaintiff's December 21, 2020 Notice of Error, despite the statutory requirements imposed pursuant to 12 C.F.R. 1024.35(e)(3) that Defendant must respond to a Notice of Error no later than 30 days after it is received.

30.     On January 26, 2021, Defendant mailed a response to the Notice of Errors stating that it did not receive the October 8, 2020, Notice of Error, and that it would issue a permanent modification agreement if Plaintiff could become current on the loan. However, because Defendant waited 7 months after the trial plan had been successfully completed (and because the trial modification did not require any payments beyond the three trial period payments) Plaintiff did not have 7 months of payments saved up. See Exhibit F.

31.    Defendant's requirement that Plaintiff make a lump sum payment equal to seven (7) trial modification payments is a breach of the trial modification offer.

32.    The trial modification specifically states that "If you make your new trial period payments timely, foreclosure sale will not be pursued."

33.    The agreement states, "After all the trial period payments are made on time, as outlined in this letter, your mortgage will be permanently modified"

34.    The agreement only allows Defendant to extend the trial period if the last trial payment is made after the 15th month.  Plaintiff's last trial payment was made on the 3rd of June, 2020.

35.    Defendant was required to add any additional interest, late fees, or other costs that had accrued between the time of the final trial modification payment and the execution of the permanent modification documents to the outstanding principal balance.  Nowhere in the agreement was Defendant authorized to add seven (7) months of trial payments as a prerequisite to getting a permanent loan modification.

36.    On February 1, 2021, Plaintiff mailed a Qualified Written Request for Information letter pursuant to Section 1024.36 of Regulation X requesting Defendant provide Plaintiff's office with a fully itemized Payoff Balance regarding the above captioned loan. See Exhibit G.

37.    On February 9, 2021, Defendant failed to provide Plaintiff with a written response acknowledging receipt of Plaintiff's Qualified Written Request letter within five (5) days as they are required to do so pursuant to 12 C.F.R. §1024.36(c).

38.    On March 4, 2021, Defendant had not responded to Plaintiff's February 1, 2021 Qualified Written Request, despite the statutory requirements imposed pursuant to 12 C.F.R.

§1024.36(d)(2)(i)(B) that Defendant must respond to a Qualified Written Request no later than 30 days after it is received.

39.     Accordingly, on February 26, 2021, Defendant issued a Notice of Error for failure to respond to the February 1, 2021 Qualified Written Request for a payoff balance and requested Defendant respond to the notice of error. See Exhibit H.

40.     As of March 8, 2021, Defendant had not acknowledged receipt of Plaintiff's February 26, 2021 Notice of Error despite the statutory requirements imposed pursuant to 12 C.F.R. 1024.35(d) that Defendant must send a written acknowledgment of receipt of Plaintiff's Notice of Error no later than 5 days after it is received.

41.     On March 10, 2021, Defendant still had not responded to the February 26, 2021 Notice of Error in violation of 1024.36 of Regulation X by failing to provide Plaintiff with a written response to Plaintiff's February 26, 2021 Notice of Error within seven (7) days as they are required to do so pursuant to 12 C.F.R. § 1024.35(e)(3)(i)(A).

42.     Accordingly, on April 21, 2021, Defendant issued a second Notice of Error for failure to respond to the February 26, 2021 Notice of Error and requested Defendant respond to that notice of error. See Exhibit I.

43.     On April 28, 2021, Plaintiff received a facsimile from Defendant with an untimely payoff statement that referred to the Qualified Written Request from February 1, 2021. See Exhibit L.

44.     On February 26, 2021, Plaintiff mailed a separate Qualified Written Request for Information pursuant to Section 1024.36 of Regulation X requesting Defendant provide Plaintiff's office with a current and itemized statement of the amount needed to reinstate to a current status. See Exhibit K.

45. On March 8, 2021, Defendant violated 1024.36 of Regulation X by failing to provide Plaintiff with a written response acknowledging receipt of Plaintiff's Qualified Written Request letter within five (5) days as they are required to do so pursuant to 12 C.F.R. §1024.36(c).

46. On March 29, 2021, Defendant still had not responded to Plaintiff's February 26, 2021 Qualified Written Request for a reinstatement figure, despite the statutory requirements imposed pursuant to 12 C.F.R. §1024.36(d)(2)(i)(B) that Defendant must respond to a Qualified Written Request no later than thirty (30) days after servicer receives the request.

47. Accordingly, on April 21, 2021, Plaintiff mailed a Notice of Error regarding the February 26, 2021 Qualified Written Request for reinstatement figures and requested Defendant respond to the notice of error. See Exhibit J.

48. On April 29, 2021, Defendant had not acknowledged receipt of Plaintiff's April 21, 2021 Notice of Error despite the statutory requirements imposed pursuant to 12 C.F.R. 1024.35(d) that Defendant must send a written acknowledgment of receipt of Plaintiff's Notice of Error no later than 5 days after it is received.

49. On May 24, 2021, Defendant still had not responded to Plaintiff's April 21, 2021 Notice of Error, despite the statutory requirements imposed pursuant to 12 C.F.R. 1024.35(e)(3) that Defendant must respond to a Notice of Error no later than thirty (30) days after it is received.

50. Accordingly, on July 26, 2021, Plaintiff mailed a second Notice of Error pursuant to 12 CFR Section 1024.35 for failure to respond to the April 21, 2021 and requested Defendant respond to the notice of error. See Exhibit M.

51. On August 3, 2021, Defendant had not acknowledged receipt of Plaintiff's July 26, 2021 Notice of Error despite the statutory requirements imposed pursuant to 12 C.F.R. 1024.35(d)

that Defendant must send a written acknowledgment of receipt of Plaintiff's Notice of Error no later than 5 days after it is received.

52.     On August 26, 2021, Defendant still had not responded to Plaintiff's July 26, 2021 Notice of Error, despite the statutory requirements imposed pursuant to 12 C.F.R. 1024.35(e)(3) that Defendant must respond to a Notice of Error no later than thirty (30) days after it is received.

53.     To date, a response to the Plaintiff's request for information regarding a reinstatement amount and responses to notices of errors have not been received by Plaintiff.

54.     As Mid America clearly has no intention to adhere to RESPA and to provide responses to the outstanding Notices of Error, Plaintiff has no other choice but to file this Complaint.

55.     As a result of Defendant's action, Plaintiff has suffered damages, including, but not limited to having to pay an attorney for extra months that he would not have had to pay had it not been for Defendant's actions, heighted and continued stress and anxiety for a period much longer than he should have had to endure it, the potential loss of his property as Defendant has filed yet another foreclosure action against him in Common Pleas court, the loss of opportunity as Plaintiff could have sold his home when the property values were at an all time high, and interest rates were at an all time low to maximize his profit.  In addition, Defendant has added extra attorneys' fees, costs, interest, and other foreclosure related expenses to the unpaid principal balance above and beyond the amounts that should have been added had it not been for Defendant's actions.

## IV.     CLAIMS

### <u>COUNT ONE: VIOLATION OF 12 C.F.R. § 1024.35</u>

**(Failure to send the permanent modification document in a timely manner and failure to fully and/or properly respond to Notices of Error)**

56.     Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint as if fully rewritten and restated herein.

57.     12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance".

58.     Additionally, 12 C.F.R. § 1024.35(e)(3)(i)(C) provides that a servicer must comply with the requirements of paragraph (e)(1) of this section for all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

59.     When Plaintiff issued his October 8, 2020 Notice of Error stating that Defendant failed to offer a permanent loan modification agreement, Defendant had 30 days to correct the error, that is to say, to offer Plaintiff a permanent loan modification agreement.  Defendant did not respond until January 26, 2021, approximately 4 months late and in violation of 12 C.F.R. § 1024.35(e)(3)(i)(C).

60.     In addition to not timely responding to the Notice of Error, Defendant is also in violation because they failed to correct the error by altering the terms of the trial modification

agreement and creating new condition for which they would offer a permanent modification that are not contained in the agreement. Specifically, Defendant demanded 7 months of trial mortgage payments or else they would not offer the permanent modification.

61. Mid America continuously and repeatedly maintained the pattern and practice of failing to provide responses to Plaintiff's Notices of Error. Specifically, Plaintiff's December 21, 2020 Notice of Error, Plaintiff's February 26, 2021 Notice of Error, Plaintiff's April 21, 2021 Notice of Error, and July 26, 2021 Notice of Error in violation of 12 C.F.R. § 1024.35(e)(3)(i)(C).

62. Furthermore, 12 C.F.R. § 1024.35(d) provides that a servicer must within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error.

63. Mid America continuously and repeatedly maintained the pattern and practice of failing to acknowledge receipt of Plaintiff's Notices of Error. Specifically, Plaintiff's December 21, 2020 Notice of Error, Plaintiff's February 26, 2021 Notice of Error, Plaintiff's April 21, 2021 Notice of Error, and July 26, 2021 Notice of Error in violation of 12 C.F.R. § 1024.35(d).

64. 12 C.F.R. § 1024.35(e)(3)(i)(A) provides that, in regards to a notice of error submitted pursuant to 12 C.F.R. § 1024.35(b)(6), failure to provide an accurate payoff balance amount upon a borrower's request in violation of section 12 CFR 1026.36(c)(3)., a servicer must comply with 12 C.F.R. § 1024.35(e)(1) no later than seven (7) days, excluding legal public holidays, Saturdays, and Sundays, after the servicer's receipt of the applicable notice of error prior to the date of a foreclosure sale, whichever is earlier.

65. Mid America violated 12 C.F.R. § 1024.35(e)(3)(i)(A) when it failed to provide a written response which either corrected the error or stated that there was no error and explain why,

to Plaintiff's February 26, 2021 Notice of Error as Defendant's failure to provide an accurate payoff balance amount upon borrower's request.

66.     As a result of Mid America's failure to follow the RESPA regulations, Plaintiff has incurred actual damages in the form of additional attorneys' fees and continues to faces the stress of possibly losing his home as Defendant has filed a second foreclosure action in the Hamilton County Court of Common Pleas.

67.     Defendant could easily resolve this matter by providing the permanent loan modification documents and to allow Plaintiff to begin making payments on his mortgage, but Defendant refuses to adhere to the terms of the trial loan modification, and refuses to properly respond to Plaintiff's Notices of Error.

**COUNT 2:  VIOLATION OF 12 C.F.R. § 1024.36**
**(Failure to fully and/or properly respond to a Qualified Written Request)**

68.     Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint as if fully rewritten and restated herein.

69.     12 C.F.R. § 1024.36(a) requires that "A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan…A qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section, and a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request."

70.     12 C.F.R. § 1024.36(c) Acknowledgment of receipt states that "Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information

12

request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the information request."

71.     Mid America violated 12 C.F.R. § 1024.36(c) when it failed to provide a written response acknowledging receipt of Plaintiff's February 26, 2021 Qualified Written Request for a reinstatement figure within five (5) days of that request.

72.     Furthermore, 12 C.F.R. § 1024.36(d)(2)(B) provides that a servicer must comply with the requirements of paragraph (d)(1) of this section for all other requests for information, not later than thirty (30) days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

73.     Mid America violated 12 C.F.R. § 1024.36(d)(2)(B) when it failed to conduct a reasonable investigation and to provide a written response, complying with 12 C.F.R. § 1024.36(d)(1), to Plaintiff's February 26, 2021 Qualified Written Request for a reinstatement figure within 30 days of that request.

74.     As a result of Mid America's failure to follow the RESPA regulations, Plaintiff has incurred actual damages in the form of additional attorneys' fees and continues to face the additional stress of the possible loss of his home as Defendant has filed another foreclosure action in the Hamilton County Court of Common Pleas.

## COUNT THREE: VIOLATION OF 12 C.F.R. § 1024.41(d)
**(Failure to send written notice as to why the loan modification application was denied)**

75.     Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint as if fully rewritten and restated herein.

76.     12 C.F.R. § 1024.41(d) states, "Denial of loan modification options. If a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower pursuant to paragraph (c) of this section, a servicer shall state in the

notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria."

77.     On March 5, 2020, Defendant emailed Plaintiff's counsel an approval letter that approved Plaintiff's loan modification application and offered a trial payment agreement. See Exhibit B. The agreement stated that the first trial payment would be due on April 1, 2020.

78.     Plaintiff accepted and successfully completed the trial modification plan by making trial payments for the months of April, May, and June of 2020. Although Plaintiff successfully made all the trial payments, Defendant did not offer a permanent modification agreement in breach of the trial payment agreement.

79.     Mid America did not notify Plaintiff of a denial in writing. Instead, Mid America sent a faxed letter stating it would agree to a permanent modification if Plaintiff met a new set of conditions not contained in the trial modification agreement.

80.     Mid America is required by statute to provide the specific reasons for any denial in writing, and Defendant has failed to do so.

81.     Mid America also violated 12 C.F.R. § 1024.41by failing to timely provide a proper denial letter when Mid America decided not to offer a permanent modification after Plaintiff made timely trial payments.

82.     As a result of Mid America's failures to follow the RESPA regulations, Plaintiff has incurred actual damages in the form of additional attorneys' fees and continues to face additional stress from the possible loss of his home as Defendant has filed another foreclosure action in the Hamilton County Court of Common Pleas.

## **COUNT 4: UNJUST ENRICHMENT**

14

83. Plaintiff incorporates by reference all the preceding paragraphs in the Complaint as if fully rewritten and restated herein.

84. Plaintiff paid trial payments to Mid America because he was told that he would be reviewed for a permanent loan modification agreement.

85. Defendant kept the money that was paid by Plaintiff and failed to offer Plaintiff's a permanent modification agreement pursuant to the trial payment agreement.

86. Defendant has added additional late fees, attorneys' fees, and other foreclosure costs to the outstanding principal balance unjustly because Plaintiff has complied with all of Defendants' requirements, and Defendant keeps changing the requirements to purposefully cause Plaintiff to fail.

87. Defendant has been unjustly enriched by keeping the money paid by Plaintiff, and by increasing the total amount owed to Plaintiff unjustly.

## COUNT 5: INTENTIONAL FRAUDULENT MISREPRESENTATION

88. Plaintiff incorporates by reference all the preceding paragraphs of the Complaint as if fully rewritten and restated herein.

89. Mid America agreed to a trial payment agreement that would end in a permanent modification offer. Plaintiff relied upon this representation and proceeded to make trial modification payments, and to otherwise cooperate with the process as Mid America directed. However, after Plaintiff made his trial payments, Defendant failed to offer a permanent modification agreement.

90. Mid America refused to provide a permanent modification, and demanded additional money even though none of the additional requirements or demands made by Mid America were contained in the trial modification agreement.

91.     As a direct and proximate result of Defendant's misrepresentations, Plaintiff has suffered the out-of-pocket costs including, but not limited to having to spend extra months of paying an attorney to defend a foreclosure and to apply for a loan modification, and the costs of having to keep paying an attorney to continue to fight when this matter should have been concluded years ago, an increase in the total amount owed as Defendant continues to add fees, and costs, and interest to the loan, and significant added stress over the possible loss of Plaintiff's home.

92.     As a direct and proximate result of Defendant's misrepresentations, Plaintiff has suffered damages including but not limited to heightened stress, and anxiety over what is going to happen to his home.

93.     As a direct and proximate result of Defendant's misrepresentations, Plaintiff suffered damages including, but not limited to having to pay out of pocket trial modification payments toward a loan without an offer for a permanent modification agreement

94.     Mid America's misrepresentation was intentional as evidenced by the fact that all of the trial payments were made by Plaintiff and Defendant failed to offer a permanent modification.

95.     Upon information and belief, Mid America's profits when a loan is in default because any late fees that are generated are paid to Mid America, giving Mid America incentive to keep a loan in default as long as possible.

## COUNT 6: NEGLIGENT MISREPRESENTATION

96.     Plaintiff incorporates by reference all the precedent paragraphs of the Complaint as if fully rewritten and restated herein.

97.     Defendant knew or should have known whether or not the trial payments were paid by Plaintiff and that it would not offer a permanent modification agreement.

16

98.     Mid America failed to use reasonable care or competence when relaying false information to Plaintiff that it would offer a permanent modification.

99.     Plaintiff's reliance upon these representations was justified as Mid America continued to offer reassurances.

100.    As a direct and proximate result of Defendant's misrepresentations, Plaintiff has suffered the out-of-pocket costs including, but not limited to having to spend extra months of paying an attorney to defend a foreclosure and to apply for a loan modification, and the costs of having to keep paying an attorney to continue to fight when this matter should have been concluded years ago.

101.    As a direct and proximate result of Defendant's misrepresentations, Plaintiff has suffered damages including, but not limited to heightened stress, and anxiety over what is going to happen to her inherited home.

102.    As a direct and proximate result of Defendant's misrepresentations, Plaintiff suffered damages including, but not limited to having to pay out of pocket trial modification payments toward a loan without an offer for a permanent modification agreement.

103.    Upon information and belief, Mid America's profits when a loan is in default because any late fees that are generated are paid to Mid America, giving Mid America incentive to keep a loan in default as long as possible.

## COUNT 7: BREACH OF CONTRACT

104.    Plaintiff incorporates by reference all the precedent paragraphs of the Complaint as if fully rewritten and restated herein.

105.    Defendant made a written offer to permanently modify Plaintiff's loan if Plaintiff complied with all of the terms and conditions contained in the written offer.

106. Plaintiff signed the agreement and complied with all of the terms and conditions.

107. Bargained for consideration was offered by Plaintiff, who relied upon the promises of Defendant, because Plaintiff provided Defendant with personal confidential information that Plaintiff was not required to provide which would make it significantly easier for Defendant to engage in collection efforts should Plaintiff default in the future.

108. Bargained for consideration was offered by Plaintiff, who relied upon the promises of Defendant, when Plaintiff, to his detriment, decided not to sell his property when property values were at an all time high and interest rates were at an all time low, as he believed he was going to get to keep the property and that his loan would be permanently modified. This consideration benefited Defendant because Defendant would make more money with a conforming loan, than they would if they simply received a payoff via a sale of Plaintiff's property.

109. Bargained for consideration was offered by Plaintiff by agreeing to allow Defendant to add additional attorneys' fees and court costs and other foreclosure related expenses to his unpaid principal balance as he navigated the trial modification period, which was to Plaintiff's detriment and to Defendant's benefit.

110. Defendant breached the agreement when it failed to adhere to the terms of the offer by refusing to permanently modify Plaintiff's loan.

111. Defendant further breached the agreement by addition conditions that were not a part of the agreement in order for Plaintiff to obtain a permanent modification.

112. As a direct and proximate result of Defendant's misrepresentations, Plaintiff has suffered damages including, but not limited to, heightened stress and anxiety over what is going to happen to her inherited home, additional attorneys' fees and costs that Plaintiff would not have had if Defendant had not breached the agreement.

18

113.

## V.    PRAYER FOR RELIEF

**WHEREFORE**, THE Plaintiff respectfully requests this Honorable Court enter judgment as follows:

(a) For an award of statutory damages to be determined by the court, including, but not limited to:

  (i)  for an award of statutory damages of $2,000 per occurrence for willful violation of 12 C.F.R. §1026.36.

  (ii) for an award of statutory damages of $2,000 per occurrence for willful violation of 12 C.F.R. §1024.35.

(b) for an award of actual damages incurred by Plaintiff in an amount to be determined at the trial of this matter.

(c) for an award of costs and reasonable attorneys' fees.

(d) For an award of punitive damages.

(e) For any other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Peter Cozmyk

_____

Peter Cozmyk (0078862)
COZMYK LAW OFFICES, LLC
6100 Oak Tree Blvd. #200
Independence, OH 44131
(877) 570-4440
F: (216) 672-5261
Email: pcozmyk@cozmyklaw.com
*Attorney for Plaintiff*

## **<u>JURY DEMAND</u>**

That Plaintiff hereby respectfully requests a trial by Jury. U.S. Const. Amend 7. Fed.R.Civ.Proc. 38.

Respectfully submitted,

/s/ Peter Cozmyk

_____

Peter Cozmyk (0078862)
COZMYK LAW OFFICES, LLC
6100 Oak Tree Blvd. #200
Independence, OH 44131
(877) 570-4440
F: (216) 672-5261
Email: pcozmyk@cozmyklaw.com
***Attorney for Plaintiff***